## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| RICKEY COFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  4:18-cv-00607-SGC |
| | ) | |
| THE HARTFORD, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**[1]

Plaintiff Rickey Cofield filed this matter, seeking long-term disability ("LTD") benefits pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA").   Defendant Hartford Life and Accident Insurance Company issued and administered the LTD policy at issue.  (Doc. 21 at 3).[2]  Presently pending are three motions: (1) Plaintiff's motion for summary judgment[3]; (2) Hartford's motion for summary judgment; and (3) Plaintiff's motion to remand.  (Docs. 18, 20, 24).  The motions are fully briefed and ripe for

---

[1] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 7).

[2] Citations to the record in this case refer to the document and page numbers assigned by the court's electronic document management system and appear in the following format: (Doc. __ at __).  Citations to the sealed Administrative Record (Doc. 15) refer to the Bates-Stamped page numbers assigned by the parties and appear in the following format: (R. __).

[3] This motion is entitled "Plaintiff's Motion for Judgment for Continuing LTD Benefits With Submissions."  (Doc. 18 at 1).  While the motion does not invoke a particular procedural rule, the undersigned construes the motion as brought pursuant to Rule 56 of the *Federal Rules of Civil Procedure*.

adjudication.  (Docs. 18-31).  As explained below, Plaintiff's motions are due to be denied, and Hartford's motion is due to be granted.

## I.    FACTS[4]

Plaintiff worked for Mohawk ESV, a carpet manufacturer, for thirty-three years.  (Doc. 31 at 1).  Hartford issued a group policy (the "Policy") to Mohawk to insure LTD benefits under Mohawk's employee welfare benefit plan (the "Plan"). (Doc. 21 at 3).  As a Mohawk employee, Plaintiff was a participant in the Plan; Hartford administered LTD claims under the Plan.  (*Id.*).  The Policy included the following definitions and provisions regarding Plaintiff's eligibility for benefits:

> **Disability or Disabled** means You are prevented from performing one or more of the Essential Duties of:
> 1) Your Occupation during the Elimination Period;
> 2) Your Occupation, for the 12 months following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings; and
> 3) after that, Any Occupation.
>
> If at the end of the Elimination Period, You are prevented from performing one or more of the Essential Duties of Your Occupation, but Your Current Monthly Earnings are equal to or greater than 80% of Your Pre-disability Earnings, Your Elimination Period will be extended for a total period of 12 months from the original date of Disability, or until such time as Your Current Monthly Earnings are less than 80% of Your Pre-disability Earnings, whichever occurs first.

---

[4] This recitation includes all material facts necessary to resolve both pending motions for summary judgment. Plaintiff largely admitted the facts set forth in Hartford's brief in support of its motion for summary judgment.  (Doc. 25 at 2).  Any factual disputes are noted, either in this recitation of facts or the subsequent discussion.

Your Disability must result from:
    1)  accidental bodily injury;
    2)  sickness;
    3)  Mental Illness
    4)  Substance Abuse; or
    5) pregnancy.
Your failure to pass a physical examination required to maintain a license to perform the duties of Your Occupation, alone, does not mean that You are Disabled.

(R. 49-50).  The Policy further defined the terms "any occupation," "other income benefits," and "overpayment" as follows:

**Any Occupation** means any occupation for which You are qualified by education, training or experience, and that has an earnings potential greater than the lesser of:
    1)  the product of Your Indexed Pre-disability Earnings and the Benefit Percentage; or
    2)  the Maximum Monthly Benefit.

(R. 49).

**Other Income Benefits** means the amount of any benefit for loss of income, provided to You or Your family, as a result of the period of Disability for which You are claiming benefits under The Policy. This includes any such benefits for which You or Your family are eligible or that are paid to You or Your family, or to a third party on Your behalf, pursuant to any:
. . .
    5)  disability benefits under:
        a) the United States Social Security Act or alternative plan offered by a state or municipal government;

(R. 51).

**Overpayment**: *When does an overpayment occur?*
An overpayment occurs:

> 1) when We determine that the total amount We have paid in benefits is more than the amount that was due to You under The Policy; or
> 2) when payment is made by Us that should have been made under another group policy.
>
> This includes, but is not limited to, overpayments resulting from:
> > 1) retroactive awards received from sources listed in the Other Income Benefits definition;
> > 2) failure to report, or late notification to Us of any Other Income Benefit(s) or earned income;
> > 3) misstatement;
> > 4)fraud; or
> > 5) any error We make.

(R. 47).

> Regarding the calculation and payment of benefits, the Policy provided:
>
> If You are Disabled and not receiving benefits under the Return to Work Incentive, We will calculate Your Monthly Benefit as follows:
> > 1) multiply Your Monthly Income Loss by the Benefit Percentage;
> > 2) compare the result with the Maximum Benefit; and
> > 3) from the lesser amount, deduct Other Income Benefits
> The result is your monthly benefit.

(R. 42).   Plaintiff was defined as a "class 2" employee under the Policy.  (*See* Doc. 21 at 3). For a class 2 employee, the "Benefit Percentage" was 50%, and the maximum duration of benefits for an employee who became disabled before the age of sixty-one was five years.  (R. 37-39).

Unsurprisingly, LTD benefit payments would cease when the employee was no longer disabled under the Policy's terms.  (R. 42).  Finally, the Policy provided Hartford the right to recoup any overpayments:

We have the right to recover from You any amount that We determine to be an overpayment.  You have the obligation to refund to Us any such amount.  Our rights and Your obligations in this regard may also be set forth in the reimbursement agreement You will be required to sign when You become eligible for benefits under The Policy.

If benefits are overpaid on any claim, You must reimburse us within 30 days.

If reimbursement is not made in a timely manner, We have the right to:
> 1) recover such overpayments from:
>> a)  You;
>> b)  any other organization;
>> c)  any other insurance company;
>> d)  any other person to or for whom payment
>> was made;
>> e)  Your estate;
> 2) reduce or offset against any future benefits payable to You or Your survivors, including the Minimum Monthly Benefit, until full reimbursement is made.  Payments may continue when the overpayment has been recovered;
> 3) refer Your unpaid balance to a collection agency; and
> 4) pursue and enforce all legal and equitable rights in court.

(R. 47-48).

Following a traffic accident, Plaintiff quit working for Mohawk in April 2016 due to back and hip pain.  (Doc. 21 at 7; *see* R. 511, 586).  Plaintiff was approved for short-term disability benefits from May 2, 2016, through July 31, 2016.  (Doc. 21 at 7; R. 510).  During this time, Plaintiff sought medical treatment from his primary care physician, Russel Peterson, M.D., who in turn referred him to James McGrory, M.D., an orthopedist.  (*See* Doc. 21 at 7; R. 555-58).  Plaintiff

saw Dr. McGrory on May 4, 2016, complaining of lower back pain; x-rays showed degenerative changes with disc space narrowing at L4-5, while an MRI revealed degenerative disc disease with disc desiccation and a mild loss of disc height.  (R. 555-61; *see* Doc. 21 at 7; Doc. 19 at 5). On May 18, 2016, Dr. McGrory noted there was no significant neurocompressive disease; he prescribed a lumbar corset, physical therapy, and muscle relaxers.  (Doc. 19 at 5).  Plaintiff saw Dr. McGrory again on June 8, 2016, complaining of worsening hip pain and requesting surgery. (R. 555; *see* Doc. 21 at 7; Doc. 19 at 5-6).   On July 27, 2016, Dr. McGrory completed an Attending Physician's Statement ("APS") noting Plaintiff: (1) suffered from osteoarthritis of the hip; (2) was scheduled to have hip replacement surgery on August 2, 2016; and (3) had "been out of work due to the severity of diagnosis and a physically demanding job."  (R. 520-21; *see* Doc. 21 at 7-8).

Plaintiff submitted his application for LTD benefits under the Policy on August 22, 2016; he was fifty-two.  (R. 586-87; *see* R. 159).  Hartford approved Plaintiff's claims effective August 1, 2016.  (R. 198-201).  Hartford paid Plaintiff $1,000 per month—the maximum monthly LTD benefit under the Policy—for twelve months.  (*See* Doc. 21 at 17).  Hartford's award letter noted: (1) Plaintiff's monthly benefit would be reduced by any Social Security benefits he might

receive;[5] and (2) benefits under the Policy would expire after five years, so any payments would cease after July 31, 2021.  (R. 198-99; *see* Doc. 21 at 8-9). Additionally, Plaintiff executed a Reimbursement Agreement acknowledging Hartford's right to reduce or eliminate any future LTD benefits in order to recover any unreimbursed overpayments.  (R. 198; *see* Doc. 21 at 8).

Dr. McGrory performed Plaintiff's left hip replacement on August 2, 2016. (Doc. 21 at 8; Doc. 19 at 6).  During follow-up visits, Dr. McGrory noted Plaintiff was recovering and doing well.  (Doc. 21 at 8; Doc. 19 at 6; R. 506, 525).  During a November 16, 2016 visit, Dr. McGrory noted Plaintiff's left hip was doing well but concluded he needed a right hip replacement.  (Doc. 21 at 9; Doc. 19 at 6; R. 495).  Dr. McGrory completed a second APS, including this assessment and noting Plaintiff was unable to work due to right hip osteoarthritis; Dr. McGrory estimated these restrictions would persist for three to six months.  (R. 491; *see* Doc. 21 at 9). Dr. McGrory performed Plaintiff's right hip replacement on March 7, 2017.  (Doc. 21 at 10; Doc. 19 at 6).  Two weeks later, on March 22, 2017, Dr. McGrory noted Plaintiff had restricted range of motion in his right hip, with pain in all directions; Dr. McGrory also opined Plaintiff was unable to work at the time.  (Doc. 19 at 7). By April 19, 2017, Dr. McGrory noted Plaintiff had a normal gait, no limp, and

---

[5] Regardless of any offset for other earnings, Plaintiff was entitled to the $100 minimum monthly benefit so long as he was disabled under the Policy's terms.  (R. 37; Doc. 21 at 18; Doc. 25 at 1).

walked without assistance, although he could not work for at least another two months.  (R. 407; *see* Doc. 21 at 10; Doc. 19 at 7).

During a July 5, 2017 visit, Dr. McGrory noted he was "very happy" with the surgical results and that Plaintiff's hip was "doing very well."  (R. 407).  Dr. McGrory noted Plaintiff's principal limitation was lower back pain and that he would have "a great deal of difficulty lifting."  (Doc. 19 at 17).  On July 10, 2017, Dr. McGrory completed a third APS, noting Plaintiff complained of severe lower back pain.  (R. 346-47).  Dr. McGrory found tender L4-S1 paraspinals, worse with extension, and half of normal range of motion.  (R. 346).  Dr. McGrory opined Plaintiff was able to return to work but was restricted in the following respects: (1) no bending, stooping, crawling, kneeling, or climbing; (2) lifting no more than twenty pounds; (3) walking on concrete floors no more than one to two hours at a time; (4) alternating between sitting and standing; (5) sitting intermittently for four hours at a time, for a total of eight hours per day; (6) standing intermittently for four hours at a time, for a total of eight hours per day; and (7) walking intermittently for two hours at a time, for a total of eight hours per day.  (R. 346-47).  Dr. McGrory further opined Plaintiff was capable of working under these restrictions as of July 5, 2017.  (R. 347).

Meanwhile, Hartford reviewed Plaintiff's claim to determine whether he would be entitled to LTD benefits after August 1, 2017, when Plaintiff would no

longer be considered disabled under the Policy unless he could not perform any occupation. (Doc. 21 at 9; Doc. 19 at 1-2). On March 16, 2017, Plaintiff completed a questionnaire noting he earned $300 per month as a preacher. (R. 477, 483). On July 19, 2017, Kristel Heard, MS, CRC, Hartford's clinical rehabilitation counselor, conducted a review of Plaintiff's claim and drafted an "Employability Analysis Report" ("EAR"). (R. 301-36; *see* Doc. 21 at 11). The EAR noted the restrictions imposed by Dr. McGrory's July 10, 2017 APS, as well as Plaintiff's activity as a church pastor. (R. 301). The EAR concluded Plaintiff was physically capable of performing eight jobs classified as sedentary or requiring light exertion and earning between $2,385.80 and $2,598.27 per month. (R. 302).[6]

On July 25, 2017, Hartford notified Plaintiff his LTD benefits would be terminated as of August 1, 2017, when the definition of disability changed. (R. 157-61; *see* Doc. 19 at 3-4). This determination was based on Dr. McGrory's July 10, 2017 APS and Hartford's EAR. (R. 160). Counsel for Plaintiff administratively appealed the termination of LTD benefits, submitting an evaluation Dr. McGrory completed on March 17, 2017, just ten days after Plaintiff's right hip replacement. (R. 238-41; *see* Doc. 19 at 4). Unsurprisingly, Dr. McGrory's earlier evaluation found Plaintiff suffered from more significant

---

[6] This is the only portion of Hartford's recitation of facts which Plaintiff denies. (*See* Doc. 25 at 2). However, Plaintiff does not offer an alternative version of the facts. Instead, it appears Plaintiff takes issue with Hartford's ultimate conclusion that he was physically capable of performing other jobs.

limitations than reflected in his July 10, 2017 APS, and opined he was unable to work at that time.  (R. 254; Doc. 18-10 at 17).  Plaintiff's counsel also provided two supporting letters noting Plaintiff slept with oxygen due to chronic obstructive pulmonary disease ("COPD").  (Doc. 19 at 4).

In response to Plaintiff's administrative appeal, Hartford hired Professional Disability Associates to conduct an independent medical review, which Rajesh Kannan Ethiraj, M.D., completed on February 27, 2018.  (R. 394-400; Doc. 21 at 13; Doc. 25 at 16).  As part of his review, Dr. Ethiraj spoke with Plaintiff's primary care physician, Dr. Peterson, regarding his medical conditions, which included an upper respiratory infection, obesity, and mild chronic obstructive pulmonary disease from past smoking.  (R. 396).  Dr. Peterson noted Plaintiff met the criteria for receiving nocturnal oxygen but he had not placed any restrictions on Plaintiff other than possible limitation of activity tolerance due to obesity.  (*Id.*).  Dr. Peterson also agreed: (1) with the restrictions and limitations imposed by Dr. McGrory's July 10, 2017 APS; and (2) that Plaintiff could work full-time.  (*Id.*).[7]

Dr. Ethiraj reviewed each of Plaintiff's medical conditions in turn.  Regarding Plaintiff's hip problems, Dr. Ethiraj concluded—based on the positive surgical outcomes—there was no medical evidence to support any restrictions

---

[7] Plaintiff filed a motion to strike—on hearsay grounds—Dr. Ethiraj's statements regarding his conversation with Dr. Peterson.  (Doc. 23).  The court termed the motion to strike, noting it construed the motion as objections to the admissibility of this evidence on summary judgment. (Doc. 32).  The substance of Plaintiff's objections will be addressed later in this opinion.

beyond forbidding climbing and kneeling.  (R. 397).  Regarding back pain, Dr. Ethiraj noted: (1) Plaintiff had reported back pain for more than two years; and (2) the results of the May 12, 2016 MRI showed degenerative changes and facet arthropathy at L3-L5 but no evidence of neurocompression.  (*Id.*).  As a result, Plaintiff was prescribed a muscle relaxer and back support and was referred to physical therapy.  (*Id.*).  Medical records did not show further evidence of this condition until April 19, 2017, when plaintiff reported back pain and right leg weakness.  (*Id.*).  However, there was no evidence of lumbar radiculopathy or lower extremity neurologic deficits.  (*Id.*).  Dr. Ethiraj also noted Plaintiff was morbidly obese and had mild COPD but there was no evidence to support restrictions based on these conditions.  (R. 397-98).

Regarding Plaintiff's restrictions, Dr. Ethiraj concluded Plaintiff was slightly more restricted than reflected in Dr. McGrory's July 10, 2017 APS.  Specifically, Dr. Ethiraj opined Plaintiff could: (1) stand, walk, and climb for an hour at a time, for a total of three to six hours each day; (2) walk for no more than one to two hours at a time on concrete floors; (3) occasionally reach below the waist; (4) occasionally lift, carry, push, and pull up to twenty pounds; and (4) never stoop, crawl, kneel, climb ladders, or work at unprotected heights.  (R. 399).  Based on these limitations, Dr. Ethiraj concluded Plaintiff would be capable of working on August 1, 2017.  (R. 400).

Based on Dr. Ethiraj's recommendations, on March 1, 2018, Kristel Heard created an addendum to her previous EAR.  (R. 357-91; *see* Doc. 21 at 15). Specifically, the EAR was adjusted to allow Plaintiff to: (1) constantly reach, handle, finger, and feel; and (2) never work in high exposed places.  (R. 357-58). Heard concluded these restrictions still allowed Plaintiff to perform all of the jobs identified in the original EAR.  (R. 358).

On March 9, 2018, Hartford upheld its determination that Plaintiff was no longer entitled to LTD benefits under the Policy.  (R. 146-49; *see* Doc. 21 at 15). In reaching this decision, Hartford analyzed Dr. Ethiraj's review; it also considered Dr. McGrory's March 17, 2017 APS but noted it was contradicted by his more recent July 10, 2017 APS.  (R. 148).  Hartford noted the limitations Dr. Ethiraj recommended were actually more restrictive than those imposed by Dr. McGrory—with which Dr. Peterson agreed—but still allowed Plaintiff to perform other jobs.  (R. 148-49).  Hartford concluded Plaintiff could perform the essential duties of other jobs and thus determined Plaintiff was not disabled under the Policy beginning August 1, 2017.  (R. 149).

Plaintiff filed an application for Social Security Disability Insurance ("SSDI") on July 7, 2016—six weeks before he submitted his application for LTD benefits under the Policy.  (Doc. 18-2 at 5; *see* R. 159).  Although there is a factual dispute on this point, it appears Plaintiff's SSDI application was filed by a third-

party, Citizens Disability, LLC.  (*See* R. 592).[8]   On November 29, 2016, Hartford sent Citizens Disability a letter inquiring about the status of Plaintiff's SSDI application.  (R. 190).  On January 9, 2017, and April 18, 2017, Citizens Disability sent Hartford notices stating that it represented Plaintiff in his SSDI application.  (R. 489, 433).   After the Social Security Administration denied the application, Plaintiff's counsel in the instant lawsuit notified Hartford on April 24, 2017, that he was representing Plaintiff in his appeal to the agency.  (Doc. 18-7).  Plaintiff initiated the instant lawsuit by filing a complaint in Etowah County Circuit Court on March 19, 2018.  (Doc. 1-1).  Hartford removed to this court on April 17, 2018.  (Doc. 1).  At that time, Plaintiff's appeal was still pending with the Social Security Administration.

On November 11, 2018, Plaintiff's counsel notified Hartford the Social Security Administration had awarded Plaintiff SSDI benefits in a partially favorable decision on May 20, 2018.  (Doc. 21 at 16-17).  The Social Security Administration determined Plaintiff was entitled to $1,441.20 in monthly SSDI benefits beginning in December 2016.  (*Id.* at 17).  As part of the SSDI award, Plaintiff received $24,642 in past-due benefits for December 2016 through April 2018.  (*Id.*).   Plaintiff's SSDI award overlapped—albeit after the fact—with

---

[8] On July 6, 2016, Citizens Disability sent Plaintiff a letter: (1) thanking him for signing documents; (2) attaching the disability application Citizens Disability would file with the Social Security Administration; and (3) noting Citizens Disability would file the disability application unless Plaintiff needed to make any changes.  (R. 592).

Hartford's payment of LTD benefits under the Policy for eight months, from December 2016 through July 2017. Accordingly, under the Policy, Plaintiff should have received the $100 monthly minimum payment from December 2016 through July 2017—not the $1,000 monthly benefit Hartford paid. As a result of the SSDI award, Hartford overpaid Plaintiff $7,200 in LTD benefits. (*See* Doc. 21 at 18).

## II.    DISCUSSION

Before addressing the motions for summary judgment, the court will consider Plaintiff's pending motion to remand and his objection to Dr. Ethiraj's statement.

### A.    Plaintiff's Motion to Remand

Plaintiff moves to remand this case so Hartford can consider the Social Security Administration's determination that he was disabled. (Doc. 24). The general rule in the Eleventh Circuit is that this court's review[9] is limited to the evidence available to an ERISA claims administrator at the time it made its decision. *See Jett v. Blue Cross & Blue Shield of Ala., Inc.,* 890 F.2d 1137, 1140 (11th Cir. 1989); *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1354 (11th Cir. 2011). Here, the Social Security Administration did not issue its award until May 20, 2018—more than two months after Hartford's final administrative decision.

---

[9] As explained subsequently in this opinion, the arbitrary and capricious standard of review applies in this case.

Plaintiff's motion primarily consists of block quotes from *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008), *Oliver v. Coca-Cola Co.*, 397 F. Supp. 2d 1318, 1326 (N.D. Ala. 2005), *Schexnayder v. Hartford Life and Accident Ins. Co.*, 600 F.3d 465 (5th Cir. 2010), and *White v. Life Ins. Co. of N. Am.*, 892 F.3d 762, 767-68 (5th Cir. 2018). However, none of these decisions require remand here.

First, *Glenn* held a contrary disability determination by the Social Security Administration is relevant when there is a conflict of interest. 554 U.S. at 118. As explained in more detail below, Plaintiff has not shown Hartford's decision was the product of a conflict of interest. "The *Glenn* decision does not stand for the proposition that the Social Security Administration's disability determinations are binding on ERISA plan administrators." *Oates v. Walgreen Co.*, No. 12-0908, 2013 WL 1632011, at *9 (M.D. Fla. April 16, 2013). That an SSDI determination is not determinative of disability under an LTD policy is not surprising given the unique five-step sequential evaluation process, standards regarding disability, and attendant regulations governing Social Security decisions. *See Curran v. Kemper Nat'l Servs., Inc.*, No. 04-14097, 2005 WL 894840 at *8 (11th Cir. Mar. 16, 2005); *Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 803-05 (1999).

Next, in *Oliver*, a court sitting in this district found an SSDI award bolstered the opinions of the plaintiff's treating physicians and "would tip the balance" in the plaintiff's favor on "close" medical questions. 397 F. Supp. 2d at 1326. Here, the

medical question is not close because Plaintiff's treating physicians agreed with Hartford's conclusions regarding Plaintiff's abilities and limitations. If anything, Hartford imposed more significant limitations than did any of his treating physicians. Finally, in both *Schexnayder*, 600 F.3d at 470-71, and *White*, 892 F.3d at 768, the Fifth Circuit remanded, as procedurally unreasonable, cases in which contrary SSDI awards were included in the administrative records but were not addressed in the administrators' denials. These decisions do not apply here, where Hartford had already issued its final decision before the SSDI award was issued. As other courts sitting in this district have noted, "if the plan had such a duty [to continue to consider additional documents], the process of deciding each claim for benefits under ERISA could continue *ad infinitum*, or as long as the plaintiff continued to have doctor or hospital visits and chose to submit additional documents for consideration." *Ray v. Sun Life & Health Ins. Co.*, 752 F. Supp. 2d 1229, 1234 (N.D. Ala. 2010); *White v. Hartford Life & Accident Ins. Co.*, No. 09-2384-JEO, 2011 WL 13285549, at *1 (N.D. Ala. Oct. 26, 2011).

Finally, as Hartford notes, remand to the administrator here would not afford Plaintiff relief. Plaintiff received a year's worth of the maximum LTD benefit available under the Policy until the definition of disability changed on August 1, 2017. The maximum duration of LTD benefits available under the Policy was five years, meaning Plaintiff could have collected LTD benefits for another four years

16

at most.   However, under the income offset provisions of the Policy, Plaintiff should have received the minimum benefit amount of $100 per month starting in December 2016.   Accordingly, even if Hartford determined on remand that Plaintiff was disabled in light of the SSDI award, the most it could ever owe Plaintiff would be $4,800 in LTD benefits.   Because this amount is less than the $7,200 Hartford already overpaid from December 2016 through July 2017, remand would not afford Plaintiff any relief.

For the foregoing reasons, Plaintiff's motion to remand for consideration of the SSDI award is **DENIED**.  (Doc. 24).

### B.   <u>Plaintiff's Objections to Hartford's Evidence</u>

As previously noted, the court construes Plaintiff's motion to strike as objections to the admissibility of Hartford's evidence in support of its motion for summary judgment.   Thus construed, Plaintiff objects on hearsay grounds to Dr. Ethiraj's review to the extent it describes Dr. Peterson's statements regarding Plaintiff's restrictions.   (Doc. 23).   The one-page motion does not cite any legal authority, and Plaintiff did not file a reply in support of the motion.

As an initial matter, courts hearing ERISA cases must examine the administrative record to determine whether it supports the administrator's decision. Thus, for purposes of this court's review, Dr. Ethiraj's recap of his conversation with Dr. Peterson does not constitute hearsay because it is not offered for the truth

of the matter asserted.  *See Adair v. El Pueblo Boys' & Girls' Ranch, Inc.,* No. 06-1343, 2008 WL 792031, at *9 (D. Colo. Mar 20, 2008); *Trustmark Ins. Co. v. Schuchman*, No. 99-1081, 2004 WL 1622094, at *12 (S.D. Ind. June 8, 2004). Next, even if Dr. Ethiraj's description of the conversation was subject to the rule against hearsay, it would fall within the business record exception.  FED. R. EVID. 803(6); *Adair*, 2008 WL 792031 at *9; (*see* Doc. 22-1).

For the foregoing reasons, Plaintiff's objections to the admissibility of Dr. Ethiraj's statements are **OVERRULED**.  (Doc. 23).

### C.   <u>Motions for Summary Judgment</u>

Because ERISA does not provide a standard for courts reviewing the benefits decisions of plan administrators, the Eleventh Circuit created a six-step review process in *Williams v. BellSouth Telecomms, Inc.*, 373 F.3d 1132 (11th Cir. 2004).  Since *Williams*, the first five steps have remained unchanged; the sixth step has been modified in light of the Supreme Court's decision in *Glenn*, 554 U.S. at 128.  Following *Glenn*, the six-step review process is as follows:

(1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (*i.e.*, the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

18

(3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship*, 644 F.3d at 1355. At step six, as modified by *Glenn*, if a conflict exists, the conflict is treated as one factor in determining whether the administrator's benefits decision was arbitrary and capricious. *See Capone v. Aetna Life Ins. Co.,* 592 F.3d 1189, 1196 (11th Cir. 2010) (quoting *Doyle,* 542 F.3d 1352, 1360 (11th Cir. 2008)). "[T]he burden remains on the plaintiff to show the decision was arbitrary; it is not the defendant's burden to prove its decision was not tainted by self-interest." *Id*.

Here, the Policy gives Hartford full discretionary authority to determine eligibility for benefits.[10] Accordingly, the arbitrary and capricious standard applies

---

[10] The Policy gives Hartford "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of The Policy." (R. 49). The Policy also provides that "all proof submitted must be satisfactory" to Hartford. (R. 46). This language vests Hartford with discretionary authority. *See Tippitt v. Reliance Standard Life Ins. Co.*, 457 F.3d 1227, 1233-34 (11th Cir. 2006); *Levinson v. Reliance Standard Life Ins. Co.*, 245 F.3d 1321, 1324-25 (11th Cir. 2001).

to both pending motions for summary judgment; Hartford's denial of LTD benefits will be upheld unless it abused its discretion. *Jett*, 890 F.2d at 1139.[11]  Having set forth the standards governing this case, each motion for summary judgment is addressed in turn.

### 1.    Hartford's Motion for Summary Judgment

Because Hartford determined Plaintiff was capable of performing a number of jobs at the light exertional level, it concluded he was not disabled under the Policy after July 31, 2017, when the definition of disability changed.  Hartford's conclusion regarding Plaintiff's abilities is supported by Dr. McGrory's July 10, 2017 APS, in which he released Plaintiff to work with restrictions.  While Dr. McGrory noted Plaintiff had lower back pain and suffered from degenerative changes, the restrictions he imposed accounted for this condition.  Dr. McGrory's opinions in the July 10, 2017 APS are consistent with his treatment records, which reflect Plaintiff's steady improvement following his hip replacements.  From June 2016 through November 2016, Dr. McGrory noted Plaintiff: (1) experienced pain to a degree that interfered with his activities of daily living (R. 549); (2) had painful range of motion which produced groin, thigh, and knee pain, as well as a positive Stinchfield response (R. 520); (3) was prescribed narcotic pain medication

---

[11] Plaintiff does not address Hartford's contention that the arbitrary and capricious standard of review applies to this case; nor does he suggest another standard that should apply.  However, the undersigned construes Plaintiff's arguments that Hartford abused its discretion or was "wrong and unreasonable" as a tacit admission that abuse of discretion is the appropriate standard here.  (*See* Doc. 25 at 7-16).

(R. 490); and (4) was at risk for falling and used a cane (R. 549).   However, following Plaintiff's second hip replacement, he showed steady improvement.   By April 19, 2017, Plaintiff was walking without an assistive device and had a normal gait with no limp.   (R. 407; *see* R. 467).   Dr. McGrory repeatedly noted Plaintiff was doing well and had no complaints or issues regarding his hip replacements. (R. 407, 467, 506, 525).   By July 2017, Dr. McGrory noted Plaintiff was no longer taking pain medications.   (R. 346).

Dr. McGrory's treatment records and the July 10, 2017 APS support Hartford's determination that Plaintiff could perform other work and thus was not disabled under the Policy.   *Paramore v. Delta Air Lines, Inc.*, 129 F.3d 1446, 1451 (11th Cir. 1997) (affirming summary judgment for administrator where plaintiff's treating physician opined he was capable of performing other occupations); *Kirby v. Hartford*, No. 08-0848-VEH, 2009 WL 10703312 at *12 (granting summary judgment for Hartford where records from plaintiff's treating physician supported administrator's conclusion plaintiff was not disabled).   Similarly, while Plaintiff complains of COPD and back pain, the medical evidence does not reveal Plaintiff suffered disabling limitations as a result of these conditions.

On appeal, Dr. Ethiraj conferred with Dr. Peterson, who agreed with the restrictions imposed by Dr. McGrory's opinion. Dr. Ethiraj imposed limitations that were slightly more restrictive than those suggested by Dr. McGrory and

approved of by Dr. Peterson.   Under the revised restrictions imposed by Dr. Ethiraj, Hartford's amended EAR concluded Plaintiff was capable of performing the occupations identified in its original EAR.  In light of the administrative record, Hartford's decision was not wrong; at step one of the post-*Glenn* analysis, the court agrees with it.  Moreover, as explained below, even if Hartford's decision was wrong in this case, Plaintiff could not demonstrate it was arbitrary and capricious.

As previously noted for purposes of step two of the analysis, Hartford was vested with discretion in reviewing claims under the Policy; thus the arbitrary and capricious standard   applies at step three.   In light of the foregoing medical evidence, even if Hartford's decision was *de novo* wrong, Plaintiff cannot demonstrate it was unreasonable under the arbitrary and capricious standard.  In the Eleventh Circuit, so long as there is a reasonable basis for a decision, "it must be upheld as not being arbitrary or capricious, even if there is evidence that would support a contrary decision."  *White v. Coca-Cola Co.*, 542 F.3d 848, 856 (11th Cir. 2008) (quoting *Jett*, 890 F.2d at 1140). As  another court sitting in this district has noted, where "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *White*, 2011 WL 13285549, at *9 (quoting *Davis v. Ky. Fin. Co. Ret. Plans*, 887 F.2d 689, 693 (6th Cir. 1989)).

Moving to step four of the analysis, Plaintiff notes Hartford hired Professional Disability Associates to review the evidence on appeal at the administrative level. (*E.g.* Doc. 25 at 11, 16). However, courts in the Eleventh Circuit have held there is no inherent conflict of interest in employing independent record reviewers. *McCay v. Drummond Co.*, 823 F. Supp. 2d 1221, 1246 (N.D. Ala. 2011); *see Doyle*, 542 F.3d at 1361-62.[12] Accordingly, to the extent Plaintiff contends Hartford was operating under a conflict of interest, he has failed to carry his burden in that regard.[13]

In response, Plaintiff contends summary judgment is inappropriate for four reasons: (1) Hartford is judicially estopped from denying benefits; (2) Hartford's "history of abuse"; (3) problems with Dr. Ethiraj's review; and (4) Hartford's

---

[12] Although not argued, to the extent Hartford both made eligibility decisions and paid benefits from its own funds, the court has considered whether this structural conflict of interest tainted Hartford's decision. The weight of the conflict of interest varies based on its "inherent or case-specific importance." *Glenn*, 554 U.S. at 117. And even when a conflict of interest exists, the Eleventh Circuit has emphasized "courts still 'owe deference' to the plan administrator's 'discretionary decision-making' as a whole." *Blankenship*, 644 F.3d at 1355 (quoting *Doyle*, 542 F.3d at 1363). Ultimately, "the plan administrator's interpretation of the plan 'will not be disturbed if reasonable.'" *Conkright v. Frommert*, 559 U.S. 506, 521 (2010) (quoting *Firestone*, 489 U.S. at 101). Plaintiff has not shown, and the court's review of the record has not revealed, that any structural conflict of interest had particular "inherent or case-specific importance." *See White*, 2011 WL 13285549 at *11.

[13] Finally, stepping aside from the six-step review process, it does not appear Plaintiff can prove any damages in this case. Plaintiff claims entitlement to the $100 monthly minimum benefit under the Policy. (Doc. 25 at 1). However, as noted in the facts section of this opinion, the most Hartford could owe under the minimum benefit would be $4,800. Because Hartford has already overpaid—and not recouped—$7,200 in LTD benefits, it is difficult to envision how Plaintiff could show damages. Plaintiff has not responded to Hartford's arguments on this point. (*See* Doc. 21 at 27-29).

failure to consider Plaintiff's SSDI award.  (Doc. 25).  Each argument is addressed in turn.

First, Plaintiff contends Hartford is judicially estopped from denying he is disabled because it offered to provide legal counsel to assist him in his SSDI application.  (Doc. 25 at 4-7).  Plaintiff relies exclusively on the April 18, 2017 letter Citizens Disability sent Hartford noting it represented Plaintiff.  (Doc. 25 at 3, 4; Doc. 19 at 3, 13; Doc. 30 at 1; Doc. 31 at 1, 8).  As Plaintiff would have it, this letter constituted Hartford's offer to provide legal counsel, and he notified Hartford that he rejected this offer via a notice of representation his current counsel sent Hartford on April 24, 2017.  (Doc. 25 at 4).  However, the letter on which Plaintiff relies is from Citizens Disability to Hartford; Citizens Disability notified Hartford that it represented Plaintiff, as it had since July 7, 2016—before Plaintiff filed his application for LTD benefits under the Policy.  Plaintiff does not take issue with Hartford's position that it did not refer him to legal counsel and that Citizens Disability is not its Agent.  (Doc. 29 at 7).  Accordingly, Plaintiff's arguments concerning judicial estoppel are based on a faulty factual premise.

Next, Plaintiff contends Hartford's decision was an abuse of discretion due to its "history of abuse."  (Doc. 25 at 7-13).  However, Plaintiff's arguments in this regard largely consist of block quotations from Ninth Circuit cases in which courts have found Hartford abused its discretion by relying on biased record reviewers

(Doc. 25 at 7-11), as well as district court decisions in which Hartford was found to have abused its discretion (*id.* at 11-13).  Absent is any substantive discussion of how Hartford erred in denying Plaintiff's LTD benefits here.[14]  Under the facts of this case, where Hartford imposed limitations that were more significant than those contemporaneously imposed by his treating physicians, Plaintiff has failed to show Hartford's decision was an abuse of discretion due to any conflict of interest.

Third, Plaintiff contends Hartford's decision was "wrong and unreasonable" based on the inclusion of Dr. Peterson's statements in Dr. Ethiraj's review.  (Doc. 25 at 13-16).  In particular, Plaintiff notes Dr. Peterson was not the orthopedic surgeon and the conversation with Dr. Ethiraj did not include mention of the right hip replacement surgery.  (*Id.* at 16).  In light of the medical evidence from Dr. McGrory, this argument fares no better than the argument addressed in the preceding paragraph.[15]

Finally, Plaintiff contends Hartford erred in light of his SSDI award.  (Doc. 25 at 17-20).  The vast majority of Plaintiff's argument in this regard is a verbatim

---

[14] Plaintiff quotes extensively from *Caplan v. CNA Fin. Corp.*, 544 F. Supp. 2d 984 (N.D. Cal. 2008), and *Montour v. Hartford Life & Accident Ins. Co.*, 588 F.3d 623 (9th Cir. 2009).  (Doc. 2525 at 8-11).  As another court sitting in this district has held, these cases "are unpersuasive because Eleventh Circuit law differs from Ninth Circuit law on the issue of reliance on peer reviewers . . . ."  *White*, 2011 WL 13285549, at *10.  Moreover, Plaintiff has not produced evidence showing how Hartford's relationship with Dr. Ethiraj or his employer led to a tainted decision.  *See id.*

[15] To the extent Plaintiff also relies on an argument that Dr. Ethiraj's description of the conversation with Dr. Peterson constitutes hearsay, that argument has already been rejected.

repetition of his arguments presented in the motion to remand—arguments the court has already rejected.  (*Compare* Doc. 25 at 17-20 *with* Doc. 24; Doc. 30 at 2-5).  To the extent Plaintiff contends Hartford erred in failing to address the SSDI award, the award was not issued until after Hartford's final decision and thus was not—and could not have been—in the Administrative Record Hartford considered. Moreover, as previously discussed, whether Plaintiff is disabled under the standards governing SSDI benefits is not determinative of whether he is disabled under the Policy.  Accordingly, Plaintiff's SSDI award does not militate against Hartford in this case, where its decision was supported by the Administrative Record.

For the foregoing reasons, Hartford's motion for summary judgment will be granted.  (Doc. 20).

## 2.    Plaintiff's Motion for Summary Judgment

Plaintiff's motion for summary judgment simply repackages arguments from his motion to remand and opposition to Hartford's motion. (Doc. 19).  Having already considered and rejected these arguments, further discussion is not warranted.  Accordingly, Plaintiff's motion for summary judgment will be denied. (Doc. 18).

## III.   CONCLUSION

For all of the foregoing reasons: (1) Plaintiff's motion to remand (Doc. 24) is **DENIED**; (2) Plaintiff's objections to the admissibility of Hartford's evidence (*see* Doc. 23) are **OVERRULED**; (3) Plaintiff's motion for summary judgment (Doc. 18) will be denied; and (4) Hartford's motion for summary judgment (Doc. 20) will be granted.

A separate order will be entered.

**DONE** this 7th day of May, 2020.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE